## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| | |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| | |
| Debtors. | Chapter 11 |

| | |
|---|---|
| EPIC Companies Midwest 2023, LLC, | |
| EOLA Capital, LLC, | |
| | |
| Plaintiffs, | |
| | |
| v. | Adversary No. _____ |
| | |
| Sheyenne 32 North, LLC, | |
| Sheyenne 32 South, LLC, and | |
| Sheyenne 32 South Residential, LLC, | |
| | |
| Defendants. | |

## COMPLAINT

Plaintiffs, EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC (collectively, the "Plaintiffs"), for their Complaint against Defendants, Sheyenne 32 North, LLC, Sheyenne 32 South, LLC, and Sheyenne 32 South Residential, LLC (the "Defendants"), state and allege as follows:

### PARTIES

1.    EPIC Companies Midwest 2023, LLC ("EPIC Midwest 2023") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on

or around August 15, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.[1]

2.      EOLA Capital, LLC ("EOLA") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around February 8, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

3.      Sheyenne 32 North, LLC ("Sheyenne North") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around May 1, 2019. Its principal place of business is located at 24 Bluejay Lane, Pelham, New Hampshire, 03076.[2]

4.      Sheyenne 32 South, LLC ("Sheyenne South") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around July 12, 2018. Its principal place of business is located at 4402 2nd Avenue South, Suite 12, Fargo, North Dakota 58103.[3]

5.      Sheyenne 32 South Residential, LLC ("Sheyenne Residential") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on

---

[1] As of October 10, 202hy4, all the Plaintiffs' principal addresses changed to 900 Long Lake Road, Suite 180, c/o Lighthouse Management Group, Inc., New Brighton, Minnesota 55112-6455.

[2] Up until December 27, 2024, Sheyenne North's principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

[3] Up until July 15, 2024, Sheyenne South's principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

or around April 28, 2021. Its principal place of business is located at 4402 2nd Avenue South, Suite 12, Fargo, North Dakota 58103.[4]

6.      The Defendants owe funds to the Plaintiffs pursuant to certain loan transactions.

## JURISDICTION AND VENUE

7.      The Plaintiffs filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2024 (the "Petition Date"). The bankruptcy cases are currently pending before this Court.

8.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

9.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

10.     The Plaintiffs consent to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

11.     This Complaint is filed under Fed. R. Bankr. P. 7001.

12.     The Plaintiffs and the Defendants are properly joined in this adversary proceeding under Fed. R. Civ. P. 20, as incorporated by Fed. R. Bankr. P. 7020, as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims involve common questions of law or fact.

## FACTUAL BACKGROUND

## I.   PLAINTIFFS' GENERAL STRUCTURE AND PURPOSE.

13.     The Plaintiffs are part of a series of affiliated companies known collectively as "EPIC Companies."

---

[4] Up until July 15, 2024, Sheyenne Residential's principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

14.     EPIC Companies generally consist of the Plaintiffs, certain real estate holding entities, including the Defendants, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

15.     Each of the Plaintiffs were formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of EPIC Companies (the "Project Companies").

16.     On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

17.     Based on records reviewed to date, each of the Project Companies appears to have a different ownership group.

18.     Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies.

19.     The Plaintiffs typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be subordinate to any bank debt but superior to the equity holders in each of the Project Companies.

20.     With funds received by the Plaintiffs from certain individual investors, the Plaintiffs made loans to the Project Companies.

21.     Most loans by the Plaintiffs to the Project Companies are documented by promissory notes but, on information and belief, some may be reflected solely in accounting

records.  The loans by the Plaintiffs are unsecured, as that term is generally understood under applicable law.

22.     The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Plaintiffs and a final balloon payment on the applicable maturity date.

23.     On information and belief, the Defendants are certain of the Project Companies. They have an interest in real estate developments located at the corner of 32nd Avenue W and Sheyenne Street in West Fargo, North Dakota.

## II.     TRANSFERS TO DEFENDANTS FROM EPIC MIDWEST 2023.

### A.  Sheyenne 32 North, LLC.

24.     Between December 1, 2023 and February 1, 2024, Debtor EPIC Midwest 2023 and Sheyenne North entered into some promissory notes with the following balances as of January 31, 2025:

| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|---|---|---|---|---|---|---|---|
| **EPIC Midwest 2023 to Sheyenne North** | | | | | | | |
| EPIC Midwest 2023 | 12/1/23 | $10,000 | $0.00 | $466.69 | $466.69 | $418.67 | $10,885.36 |
| EPIC Midwest 2023 | 2/1/24 | $10,000 | $0.00 | $333.35 | $466.69 | $418.67 | $10,885.36 |
| | | | | | | | **$21,770.72** |

(the "Sheyenne North Notes").

25.     The Sheyenne North Notes mature on December 1, 2026, and February 1, 2027, respectively. Interest accrues at a rate of 8.0% and the standard late fee is $0.04 per $1.00.

26.     Pursuant to the Sheyenne North Notes, EPIC Midwest 2023 offered to loan $20,000 to Sheyenne North under certain terms and conditions and Sheyenne North accepted that offer. The Sheyenne North Notes are unsecured.

27.     On November 29, 2023, and January 30, 2024, and pursuant to the Sheyenne North Notes, EPIC Midwest 2023 transferred a total of $20,000 to Sheyenne North (the "Sheyenne North Transfers").

28.     Under the terms of the Sheyenne North Notes, Sheyenne North was required to make monthly payments to EPIC Midwest 2023 in the form of interest with balloon payments upon maturity dates.

29.     The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the Sheyenne North Notes.

30.     Between December 31, 2023, and June 30, 2024, Sheyenne North paid EPIC Midwest 2023 a total of $800.04 in interest.

31.     After June 30, 2024, Sheyenne North ceased making payments to EPIC Midwest 2023 and defaulted under the Sheyenne North Notes.

32.     Therefore, all amounts owed to EPIC Midwest 2023 by Sheyenne North became immediately due and payable.

33.     As of January 31, 2025, Sheyenne North owes EPIC Midwest 2023 a total of at least $21,770.72, which consists of $20,000 of principal, $933.38 of interest, and $837.34 of late fees, with interest and fees continuing to accrue.

**B.  Sheyenne 32 South, LLC.**

34.     On March 1, 2023, Debtor EPIC Midwest 2023 and Sheyenne South entered into a promissory note with the following balance as of January 31, 2025:

| EPIC Midwest 2023 to Sheyenne South | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
| EPIC Midwest 2023 | 3/1/23 | $30,000 | $0.00 | $2,812.50 | $1,500 | $1,260 | $32,760 |
| | | | | | | | **$32,760** |

(the "Sheyenne South Note").

6

35.     The Sheyenne South Note matures on March 1, 2026. Interest accrues at a rate of 7.5% and the standard late fee is $0.04 per $1.00.

36.     Pursuant to the Sheyenne South Note, EPIC Midwest 2023 offered to loan $30,000 to Sheyenne South under certain terms and conditions and Sheyenne South accepted that offer. The Sheyenne South Note is unsecured.

37.     On March 24, 2023, and pursuant to the Sheyenne South Note, EPIC Midwest 2023 transferred a total of $30,000 to Sheyenne South (the "Sheyenne South Transfer").

38.     Under the terms of the Sheyenne South Note, Sheyenne South was required to make monthly payments to EPIC Midwest 2023 in the form of interest with a balloon payment upon maturity date.

39.     The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the Sheyenne South Note.

40.     Between March 31, 2023, and May 31, 2024, Sheyenne South paid EPIC Midwest 2023 a total of $2,812.50 in interest, which continues to accrue thereon.

41.     After May 31, 2024, Sheyenne South ceased making payments to EPIC Midwest 2023 and defaulted under the Sheyenne South Note.

42.     Therefore, all amounts owed to EPIC Midwest 2023 by Sheyenne South became immediately due and payable.

43.     As of January 31, 2025, Sheyenne South owes EPIC Midwest 2023 a total of at least $32,760, which consists of $30,000 of principal, $1,500 of interest, and $1,260 of late fees, with interest and fees continuing to accrue.

**C.  Sheyenne 32 South Residential, LLC.**

44.     On October 1, 2022, Debtor EPIC Midwest 2023 and Sheyenne Residential entered into a promissory note with the following balance as of January 31, 2025:

| | | EPIC Midwest 2023 to Sheyenne Residential | | | | | |
| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EPIC Midwest 2023 | 10/1/22 | $200,000 | $0.00 | $22,166.73 | $10,500.03 | $8,420 | $218,920.03 |
| | | | | | | | **$218,920.03** |

(the "Sheyenne Residential E23 Note," and together with the Sheyenne North Notes and Sheyenne South Notes, the "EPIC Midwest 2023 Notes").

45.     The Sheyenne Residential E23 Note matures on October 1, 2026. Interest accrues at a rate of 7.0% and the standard late fee is $0.04 per $1.00.

46.     Pursuant to the Sheyenne Residential E23 Note, EPIC Midwest 2023 offered to loan $200,000 to Sheyenne Residential under certain terms and conditions and Sheyenne Residential accepted that offer. The Sheyenne Residential E23 Note is unsecured.

47.     On September 29, 2022, and pursuant to the Sheyenne Residential E23 Note, EPIC Midwest 2023 transferred a total of $200,000 to Sheyenne Residential (the "Sheyenne Residential E23 Transfer," and together with the Sheyenne North Transfers and the Sheyenne South Transfer, the "EPIC Midwest 2023 Transfers").

48.     Under the terms of the Sheyenne Residential E23 Note, Sheyenne Residential was required to make monthly payments to EPIC Midwest 2023 in the form of interest, with a balloon payment upon maturity.

49.     The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the Sheyenne Residential E23 Note.

50.     Between October 31, 2022 and April 30, 2024, Sheyenne Residential paid EPIC Midwest 2023 a total of $22,166.73 in interest, which continues to accrue thereon.

8

51.     After April 30, 2024, Sheyenne Residential ceased making payments to EPIC Midwest 2023 and defaulted under the Sheyenne Residential E23 Note.

52.     Therefore, all amounts owed to EPIC Midwest 2023 by Sheyenne Residential became immediately due and payable.

53.     As of January 31, 2025, Sheyenne Residential owes EPIC Midwest 2023 a total of at least $218,920.03, which consists of $200,000 of principal, $10,500.03 of interest, and $8,420 of late fees, with interest and fees continuing to accrue.

54.     Before, during, and after the period of September 29, 2022, to February 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

55.     On June 11, 2024, EPIC Midwest 2023's board of directors appointed Lighthouse Management Group, Inc. ("Lighthouse") as its Chief Restructuring Officer.

56.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 29, 2022 and February 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

57.     Based on the financial records identified above and reviewed by Lighthouse, between September 29, 2022, and February 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

### III.     TRANSFERS TO SHEYENNE RESIDENTIAL FROM EOLA.

58.     On October 1, 2022, Debtor EOLA and Sheyenne Residential entered into a promissory note with the following balance as of January 31, 2025:

| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|--------|------|--------------------|----------------|---------------|-------------------|-----------|------------------|
| EOLA | 10/1/22 | $100,000 | $0.00 | $14,166.60 | $5,666.64 | $4,226.67 | $109,893.31 |
| | | | | | | | **$109,893.31** |

(the "<u>EOLA Note</u>," and together with the EPIC Midwest 2023 Notes, the "<u>Notes</u>").

59.     The EOLA Note matures on October 1, 2025. Interest accrues at a rate of 8.5% and the standard late fee is $0.04 per $1.00.

60.     Pursuant to the EOLA Note, EOLA offered to loan $100,000 to Sheyenne Residential under certain terms and conditions and Sheyenne Residential accepted that offer. The EOLA Note is unsecured.

61.     On September 29, 2022, and pursuant to the EOLA Note, EOLA transferred a total of $100,000 to Sheyenne Residential (the "<u>EOLA Transfer</u>").

62.     Under the terms of the EOLA Note, Sheyenne Residential was required to make monthly payments to EOLA in the form of interest with a balloon payment upon maturity.

63.     The failure to make payments to EOLA as and when such payments were due constitutes a default under the terms of the EOLA Note.

64.     Between October 31, 2022, and May 31, 2024, Sheyenne Residential only paid EOLA a total of $14,166.60 in interest, which continues to accrue thereon.

65.     After May 31, 2024, Sheyenne Residential ceased making payments to EOLA and defaulted under the EOLA Note.

66.     Therefore, all amounts owed to EOLA by Sheyenne Residential became immediately due and payable.

67.     As of January 31, 2025, Sheyenne Residential owes EOLA a total of at least $109,893.31, which consists of $100,000 of principal, $5,666.64 of interest, and $4,226.67 of late fees, with interest and fees continuing to accrue.

68.     Before, during, and after the period of September 29, 2022, to October 1, 2022, EOLA had creditors, including various individual investors.

69.     On June 11, 2024, EOLA's board of directors appointed Lighthouse as its Chief Restructuring Officer.

70.     Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 29, 2022 and October 1, 2022, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Sheyenne Residential, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

71.     Based on the financial records identified above and reviewed by Lighthouse, between September 29, 2022, and October 1, 2022, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Sheyenne Residential, EOLA was insolvent or became insolvent thereafter.

## IV.   PRIOR DEMAND FOR AMOUNTS OWED.

72.     On August 1, 2024, the Plaintiffs caused a demand letter to be sent on their behalf to Sheyenne South and Sheyenne Residential demanding the amounts owed to the Plaintiffs under the Notes. The Plaintiffs also had conversations with the Defendants in which they demanded the amounts owed under the Notes.

73.     As of the date of this Complaint, the Defendants have failed to pay the Plaintiffs.

74.     The Plaintiffs continue to be harmed by the Defendants' failure to pay the outstanding amounts owed by the Defendants to the Plaintiffs.

75.     The Plaintiffs are still in the process of tracing all of their transfers to the various Project Companies. To the extent the Defendants further transferred funds to other Project Companies, the Plaintiffs expressly reserve the right to pursue additional claims against the Defendants and any subsequent transferees, including, but not limited to, claims under Chapter 5 of the Bankruptcy Code.

## COUNT I
## BREACH OF CONTRACT
### (EPIC Midwest 2023 v. Sheyenne North)

76.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

77.     Between December 1, 2023 and February 1, 2024, EPIC Midwest 2023 and Sheyenne North entered into the Sheyenne North Notes.

78.     Under the terms of the Sheyenne North Notes, EPIC Midwest 2023 agreed to provide Sheyenne North a total of $20,000; in exchange, Sheyenne North agreed to make regular monthly payments to EPIC Midwest 2023.

79.     On November 29, 2023 and January 30, 2024, and pursuant to the Sheyenne North Notes, EPIC Midwest 2023 transferred a total of $20,000 to Sheyenne North.

80.     On or around June 30, 2024, Sheyenne North ceased making payments to EPIC Midwest 2023 as required by the Sheyenne North Notes.

81.     Sheyenne North's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the Sheyenne North Notes.

82.     Due to Sheyenne North's breach of the Sheyenne North Notes, EPIC Midwest 2023 has been damaged in the amount of at least $21,770.72, plus interest and other fees and costs allowed by law and the Sheyenne North Notes.

## COUNT II
## BREACH OF CONTRACT
### (EPIC Midwest 2023 v. Sheyenne South)

83.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

84.     On March 1, 2023, EPIC Midwest 2023 and Sheyenne South entered into the Sheyenne South Note.

85.     Under the terms of the Sheyenne South Note, EPIC Midwest 2023 agreed to provide Sheyenne South a total of $30,000; in exchange, Sheyenne South agreed to make regular monthly payments to EPIC Midwest 2023.

86.     On March 24, 2023, and pursuant to the Sheyenne South Note, EPIC Midwest 2023 transferred a total of $30,000 to Sheyenne South.

87.     On or around May 31, 2024, Sheyenne South ceased making payments to EPIC Midwest 2023 as required by the Sheyenne South Note.

88.     Sheyenne South's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the Sheyenne South Note.

89.     Due to Sheyenne South's breach of the Sheyenne South Note, EPIC Midwest 2023 has been damaged in the amount of at least $32,760, plus interest and other fees and costs allowed by law and the Sheyenne South Note.

## COUNT III
## BREACH OF CONTRACT
### (EPIC Midwest 2023 v. Sheyenne Residential)

90.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

91.     On October 1, 2022, EPIC Midwest 2023 and Sheyenne Residential entered into the Sheyenne Residential E23 Note.

92.     Under the terms of the Sheyenne Residential E23 Note, EPIC Midwest 2023 agreed to provide Sheyenne Residential a total of $200,000; in exchange, Sheyenne Residential agreed to make regular monthly payments to EPIC Midwest 2023.

93.     On September 29, 2022, and pursuant to the Sheyenne Residential E23 Note, EPIC Midwest 2023 transferred a total of $200,000 to Sheyenne Residential.

94.     On or around April 30, 2024, Sheyenne Residential ceased making payments to EPIC Midwest 2023 as required by the Sheyenne Residential E23 Note.

95.     Sheyenne Residential's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the Sheyenne Residential E23 Note.

96.     Due to Sheyenne Residential's breach of the Sheyenne Residential E23 Note, EPIC Midwest 2023 has been damaged in the amount of at least $218,920.03, plus interest and other fees and costs allowed by law and the Sheyenne Residential E23 Note.

## COUNT IV
## BREACH OF CONTRACT
### (EOLA v. Sheyenne Residential)

97.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

98.     On October 1, 2022, EOLA and Sheyenne Residential entered into the EOLA Note.

14

99.     Under the terms of the EOLA Note, EOLA agreed to provide Sheyenne Residential a total of $100,000; in exchange, Sheyenne Residential agreed to make regular monthly payments to EOLA.

100.     On September 29, 2022, and pursuant to the EOLA Note, EOLA transferred a total of $100,000 to Sheyenne Residential.

101.     On or around May 31, 2024, Sheyenne Residential ceased making payments to EOLA as required by the EOLA Note.

102.     Sheyenne Residential's failure to make monthly payments to EOLA constitutes a breach of the EOLA Note.

103.     Due to Sheyenne Residential's breach of the EOLA Note, EOLA has been damaged in the amount of at least $109,893.31, plus interest and other fees and costs allowed by law and the EOLA Note.

## COUNT V
## UNJUST ENRICHMENT
### (EPIC Midwest 2023 v. Sheyenne North)

104.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

105.     EPIC Midwest 2023 conferred a benefit to Sheyenne North by providing $20,000 for use in Sheyenne North's real estate development project.

106.     Sheyenne North knowingly accepted the $20,000 from EPIC Midwest 2023.

107.     As Sheyenne North did not make the agreed upon monthly payments to EPIC Midwest 2023, Sheyenne North is not entitled to the benefit of the full value of the $20,000 from EPIC Midwest 2023.

108.    Under the circumstances, it would be unjust and inequitable to permit Sheyenne North to retain the benefit from its actions.

109.    The amount of benefit wrongfully retained by Sheyenne North is in the amount of at least $20,000, plus interest and other fees and costs allowed by law.

**COUNT VI**
**UNJUST ENRICHMENT**
**(EPIC Midwest 2023 v. Sheyenne South)**

110.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

111.    EPIC Midwest 2023 conferred a benefit to Sheyenne South by providing $30,000 for use in Sheyenne South's real estate development project.

112.    Sheyenne South knowingly accepted the $30,000 from EPIC Midwest 2023.

113.    As Sheyenne South did not make the agreed upon monthly payments to EPIC Midwest 2023, Sheyenne South is not entitled to the benefit of the full value of the $30,000 from EPIC Midwest 2023.

114.    Under the circumstances, it would be unjust and inequitable to permit Sheyenne South to retain the benefit from its actions.

115.    The amount of benefit wrongfully retained by Sheyenne South is in the amount of at least $30,000, plus interest and other fees and costs allowed by law.

**COUNT VII**
**UNJUST ENRICHMENT**
**(EPIC Midwest 2023 v. Sheyenne Residential)**

116.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

16

117.    EPIC Midwest 2023 conferred a benefit to Sheyenne Residential by providing $200,000 for use in Sheyenne Residential's real estate development project.

118.    Sheyenne Residential knowingly accepted the $200,000 from EPIC Midwest 2023.

119.    As Sheyenne Residential did not make the agreed upon monthly payments to EPIC Midwest 2023, Sheyenne Residential is not entitled to the benefit of the full value of the $200,000 from EPIC Midwest 2023.

120.    Under the circumstances, it would be unjust and inequitable to permit Sheyenne Residential to retain the benefit from its actions.

121.    The amount of benefit wrongfully retained by Sheyenne Residential is in the amount of at least $200,000, plus interest and other fees and costs allowed by law.

### COUNT VIII
### UNJUST ENRICHMENT
### (EOLA v. Sheyenne Residential)

122.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

123.    EOLA conferred a benefit to Sheyenne Residential by providing $100,000 for use in Sheyenne Residential's real estate development project.

124.    Sheyenne Residential knowingly accepted the $100,000 from EOLA.

125.    As Sheyenne Residential did not make the agreed upon monthly payments to EOLA, Sheyenne Residential is not entitled to the benefit of the value of the $100,000 payment from EOLA.

126.    Under the circumstances, it would be unjust and inequitable to permit Sheyenne Residential to retain the benefit from its actions.

17

127.    The amount of benefit wrongfully retained by Sheyenne Residential is in the amount of at least $100,000, plus interest and other fees and costs allowed by law.

## COUNT IX
## ACCOUNT STATED
### (EPIC Midwest 2023 v. Sheyenne North)

128.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

129.    EPIC Midwest 2023 demanded payment of Sheyenne North's account with EPIC Midwest 2023.

130.    Sheyenne North did not substantively respond to the demand or dispute any amounts.

131.    Sheyenne North did not pay the amounts due and owing to EPIC Midwest 2023.

132.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $21,770.72, plus interest and other fees and costs allowed by law.

## COUNT X
## ACCOUNT STATED
### (EPIC Midwest 2023 v. Sheyenne South)

133.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

134.    EPIC Midwest 2023 demanded payment of Sheyenne South's account with EPIC Midwest 2023.

135.    Sheyenne South did not substantively respond to the demand or dispute any amounts.

136.    Sheyenne South did not pay the amounts due and owing to EPIC Midwest 2023.

137.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $32,760, plus interest and other fees and costs allowed by law.


## COUNT XI
## ACCOUNT STATED
### (EPIC Midwest 2023 v. Sheyenne Residential)

138.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

139.    EPIC Midwest 2023 demanded payment of Sheyenne Residential's account with EPIC Midwest 2023.

140.    Sheyenne Residential did not substantively respond to the demand or dispute any amounts.

141.    Sheyenne Residential did not pay the amounts due and owing to EPIC Midwest 2023.

142.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $218,920.03, plus interest and other fees and costs allowed by law.

## COUNT XII
## ACCOUNT STATED
### (EOLA v. Sheyenne Residential)

143.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

144.    EOLA demanded payment of Sheyenne Residential's account with EOLA.

145.    Sheyenne Residential did not substantively respond to the demand or dispute any amounts.

146.    Sheyenne Residential did not pay the amounts due and owing to EOLA.

147.    As a result, EOLA has been damaged in the amount of at least $109,893.31, plus interest and other fees and costs allowed by law.

## COUNT XIII
## PROMISSORY ESTOPPEL
**(EPIC Midwest 2023 v. Sheyenne North)**

148.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

149.    Sheyenne North promised it would make regular monthly payments to EPIC Midwest 2023.

150.    In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $20,000 to Sheyenne North.

151.    EPIC Midwest 2023 was harmed by its reasonable reliance on Sheyenne North's promises, as EPIC Midwest 2023 loaned $20,000 to Sheyenne North and was not fully repaid.

152.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $21,770.72, plus interest and other fees and costs allowed by law.

## COUNT XIV
## PROMISSORY ESTOPPEL
**(EPIC Midwest 2023 v. Sheyenne South)**

153.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

154.    Sheyenne South promised it would make regular monthly payments to EPIC Midwest 2023.

155.    In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $30,000 to Sheyenne South.

156.    EPIC Midwest 2023 was harmed by its reasonable reliance on Sheyenne South's promises, as EPIC Midwest 2023 loaned $30,000 to Sheyenne South and was not fully repaid.

157.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $32,760, plus interest and other fees and costs allowed by law.

**COUNT XV**
**PROMISSORY ESTOPPEL**
**(EPIC Midwest 2023 v. Sheyenne Residential)**

158.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

159.    Sheyenne Residential promised it would make regular monthly payments to EPIC Midwest 2023.

160.    In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $200,000 to Sheyenne Residential.

161.    EPIC Midwest 2023 was harmed by its reasonable reliance on Sheyenne Residential's promises, as EPIC Midwest 2023 loaned $200,000 to Sheyenne Residential and was not fully repaid.

162.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $218,920.03, plus interest and other fees and costs allowed by law.

**COUNT XVI**
**PROMISSORY ESTOPPEL**
**(EOLA v. Sheyenne Residential)**

163.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

21

164.    Sheyenne Residential promised it would make regular monthly payments to EOLA.

165.    In reasonable reliance on those promises, EOLA loaned a total of $100,000 to Sheyenne Residential.

166.    EOLA was harmed by its reasonable reliance on Sheyenne Residential's promises, as EOLA loaned $100,000 to Sheyenne Residential and was not repaid.

167.    As a result, EOLA has been damaged in the amount of at least $109,893.31, plus interest and other fees and costs allowed by law.

## COUNT XVII
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Midwest 2023 v. Sheyenne North)

168.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

169.    EPIC Midwest 2023 entered into the Sheyenne North Notes with Sheyenne North and made the Sheyenne North Transfers to Sheyenne North and received less than reasonably equivalent value in exchange. Sheyenne North did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $800.04 to EPIC Midwest 2023 despite receiving $20,000 from EPIC Midwest 2023.

170.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between November 29, 2023 and February 1, 2024, and at all relevant times between entry into the Sheyenne North Notes and the Sheyenne North Transfers to Sheyenne North, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

171.    On information and belief, between November 29, 2023 and February 1, 2024, and at all relevant times between entry into the Sheyenne North Notes and the Sheyenne North Transfers to Sheyenne North, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

172.    Based on the financial records identified above and reviewed by Lighthouse, between November 29, 2023 and February 1, 2024, and at all relevant times between entry into the Sheyenne North Notes and the Sheyenne North Transfers to Sheyenne North, EPIC Midwest 2023 was insolvent or became insolvent as a result of the Sheyenne North Notes and the Sheyenne North Transfers.

173.    Sheyenne North was the initial transferee of the Sheyenne North Notes and Sheyenne North Transfers.

174.    Based on the foregoing, the Sheyenne North Notes and the Sheyenne North Transfers, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

175.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Sheyenne North in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XVIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest 2023 v. Sheyenne North)**

176.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

177.   EPIC Midwest 2023 entered into the Sheyenne North Notes with Sheyenne North and made the Sheyenne North Transfers to Sheyenne North and received less than reasonably equivalent value in exchange. Sheyenne North did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $800.04 to EPIC Midwest 2023 despite receiving $20,000 from EPIC Midwest 2023.

178.   Before, during, and after the period of November 29, 2023 to February 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

179.   Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between November 29, 2023 and February 1, 2024, and at all relevant times between entry into the Sheyenne North Notes and the Sheyenne North Transfers to Sheyenne North, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

180.   Sheyenne North was the first transferee of the Sheyenne North Notes and the Sheyenne North Transfers.

181.   Based on the foregoing, the Sheyenne North Notes and the Sheyenne North Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

182.   Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or

obligations from Sheyenne North in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XIX
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Sheyenne North)

183.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

184.    EPIC Midwest 2023 entered into the Sheyenne North Notes with Sheyenne North and made the Sheyenne North Transfers to Sheyenne North and received less than reasonably equivalent value in exchange. Sheyenne North did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $800.04 to EPIC Midwest 2023 despite receiving $20,000 from EPIC Midwest 2023.

185.    Before and during the period of November 29, 2023 to February 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

186.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between November 29, 2023 and February 1, 2024, and at all relevant times between entry into the Sheyenne North Notes and the Sheyenne North Transfers to Sheyenne North, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

187.    Sheyenne North was the first transferee of the Sheyenne North Notes and the Sheyenne North Transfers.

188.    Based on the foregoing, the Sheyenne North Notes and the Sheyenne North Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

189.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Sheyenne North in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XX
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EPIC Midwest 2023 v. Sheyenne South)**

190.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

191.    EPIC Midwest 2023 entered into the Sheyenne South Note with Sheyenne South and made the Sheyenne South Transfer to Sheyenne South and received less than reasonably equivalent value in exchange. Sheyenne South did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $2,812.50 to EPIC Midwest 2023 despite receiving $30,000 from EPIC Midwest 2023.

192.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between March 1, 2023 and March 24, 2023, and at all relevant times between entry into the Sheyenne South Note and the Sheyenne South Transfer to Sheyenne South, EPIC Midwest 2023

was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

193.    On information and belief, between March 1, 2023 and March 24, 2023, and at all relevant times between entry into the Sheyenne South Note and the Sheyenne South Transfer to Sheyenne South, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

194.    Based on the financial records identified above and reviewed by Lighthouse, between March 1, 2023 and March 24, 2023, and at all relevant times between entry into the Sheyenne South Note and the Sheyenne South Transfer to Sheyenne South, EPIC Midwest 2023 was insolvent or became insolvent as a result of the Sheyenne South Note and the Sheyenne South Transfer.

195.    Sheyenne South was the initial transferee of the Sheyenne South Note and Sheyenne South Transfer.

196.    Based on the foregoing, the Sheyenne South Note and the Sheyenne South Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

197.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Sheyenne South in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest 2023 v. Sheyenne South)**

198.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

199.    EPIC Midwest 2023 entered into the Sheyenne South Note with Sheyenne South and made the Sheyenne South Transfer to Sheyenne South and received less than reasonably equivalent value in exchange. Sheyenne South did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $2,812.50 to EPIC Midwest 2023 despite receiving $30,000 from EPIC Midwest 2023.

200.    Before, during, and after the period of March 1, 2023 to March 24, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

201.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between March 1, 2023 and March 24, 2023, and at all relevant times between entry into the Sheyenne South Note and the Sheyenne South Transfer to Sheyenne South, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

202.    Sheyenne South was the first transferee of the Sheyenne South Note and the Sheyenne South Transfer.

203.    Based on the foregoing, the Sheyenne South Note and the Sheyenne South Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

204.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Sheyenne South in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest 2023 v. Sheyenne South)**

205.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

206.    EPIC Midwest 2023 entered into the Sheyenne South Note with Sheyenne South and made the Sheyenne South Transfer to Sheyenne South and received less than reasonably equivalent value in exchange. Sheyenne South did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $2,812.50 to EPIC Midwest 2023 despite receiving $30,000 from EPIC Midwest 2023.

207.    Before and during the period of March 1, 2023 to March 24, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

208.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between March 1, 2023 and March 24, 2023, and at all relevant times between entry into the

Sheyenne South Note and the Sheyenne South Transfer to Sheyenne South, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

209.    Sheyenne South was the first transferee of the Sheyenne South Note and the Sheyenne South Transfer.

210.    Based on the foregoing, the Sheyenne South Note and the Sheyenne South Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

211.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Sheyenne South in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EPIC Midwest 2023 v. Sheyenne Residential)**

212.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

213.    EPIC Midwest 2023 entered into the Sheyenne Residential E23 Note with Sheyenne Residential and made the Sheyenne Residential E23 Transfer to Sheyenne Residential and received less than reasonably equivalent value in exchange. Sheyenne Residential did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid  $22,166.73 to EPIC Midwest 2023 despite receiving $200,000 from EPIC Midwest 2023.

214.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 29, 2022 and October 1, 2022, and at all relevant times between entry into the

Sheyenne Residential E23 Note and the Sheyenne Residential E23 Transfer to Sheyenne Residential, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

215.    On information and belief, between September 29, 2022 and October 1, 2022, and at all relevant times between entry into the Sheyenne Residential E23 Note and the Sheyenne Residential E23 Transfer to Sheyenne Residential, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

216.    Based on the financial records identified above and reviewed by Lighthouse, between September 29, 2022 and October 1, 2022, and at all relevant times between entry into the Sheyenne Residential E23 Note and the Sheyenne Residential E23 Transfer to Sheyenne Residential, EPIC Midwest 2023 was insolvent or became insolvent as a result of the Sheyenne Residential E23 Note and the Sheyenne Residential E23 Transfer.

217.    Sheyenne Residential was the initial transferee of the Sheyenne Residential E23 Note and Sheyenne Residential E23 Transfer.

218.    Based on the foregoing, the Sheyenne Residential E23 Note and the Sheyenne Residential E23 Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

219.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Sheyenne Residential in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXIV**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**

**(EPIC Midwest 2023 v. Sheyenne Residential)**

220.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

221.     EPIC Midwest 2023 entered into the Sheyenne Residential E23 Note with Sheyenne Residential and made the Sheyenne Residential E23 Transfer to Sheyenne Residential and received less than reasonably equivalent value in exchange. Sheyenne Residential did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $22,166.73 to EPIC Midwest 2023 despite receiving $200,000 from EPIC Midwest 2023.

222.     Before, during, and after the period of September 29, 2022 to October 1, 2022, EPIC Midwest 2023 had creditors, including various individual investors.

223.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 29, 2022 and October 1, 2022, and at all relevant times between entry into the Sheyenne Residential E23 Note and the Sheyenne Residential E23 Transfer to Sheyenne Residential, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

224.     Sheyenne Residential was the first transferee of the Sheyenne Residential E23 Note and the Sheyenne Residential E23 Transfer.

225.     Based on the foregoing, the Sheyenne Residential E23 Note and the Sheyenne Residential E23 Transfer are avoidable, and should be avoided, as fraudulent transfers or

obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

226.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Sheyenne Residential in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XXV
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Sheyenne Residential)

227.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

228.    EPIC Midwest 2023 entered into the Sheyenne Residential E23 Note with Sheyenne Residential and made the Sheyenne Residential E23 Transfer to Sheyenne Residential and received less than reasonably equivalent value in exchange. Sheyenne Residential did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $22,166.73 to EPIC Midwest 2023 despite receiving $200,000 from EPIC Midwest 2023.

229.    Before and during the period of September 29, 2022 to October 1, 2022, EPIC Midwest 2023 had creditors, including various individual investors.

230.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 29, 2022 and October 1, 2022, and at all relevant times between entry into the Sheyenne Residential E23 Note and the Sheyenne Residential E23 Transfer to Sheyenne Residential, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

231.    Sheyenne Residential was the first transferee of the Sheyenne Residential E23 Note and the Sheyenne Residential E23 Transfer.

232.    Based on the foregoing, the Sheyenne Residential E23 Note and the Sheyenne Residential E23 Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

233.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Sheyenne Residential in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XXVI
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EOLA v. Sheyenne Residential)

234.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

235.    EOLA entered into the EOLA Note with Sheyenne Residential and made the EOLA Transfer to Sheyenne Residential and received less than reasonably equivalent value in exchange. Sheyenne Residential did not provide EOLA with a security interest in any collateral and eventually only paid $14,166.60 to EOLA despite receiving $100,000 from EOLA.

236.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 29, 2022 and October 1, 2022, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Sheyenne Residential, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small.

237.     On information and belief, between September 29, 2022 and October 1, 2022, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Sheyenne Residential, EOLA intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

238.     Based on the financial records identified above and reviewed by Lighthouse, between September 29, 2022 and October 1, 2022, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Sheyenne Residential, EOLA was insolvent or became insolvent as a result of the EOLA Note and the EOLA Transfer.

239.     Sheyenne Residential was the initial transferee of the EOLA Note and the EOLA Transfer.

240.     Based on the foregoing, the EOLA Note and the EOLA Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

241.     Pursuant to 11 U.S.C. § 550(a), EOLA may recover such fraudulent transfers or obligations from Sheyenne Residential in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXVII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EOLA v. Sheyenne Residential)**

242.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

243.     EOLA entered into the EOLA Note with Sheyenne Residential and made the EOLA Transfer to Sheyenne Residential and received less than reasonably equivalent value in exchange.

Sheyenne Residential did not provide EOLA with a security interest in any collateral and eventually only paid $14,166.60 to EOLA despite receiving $100,000 from EOLA.

244.    Before, during, and after the period of September 29, 2022 to October 1, 2022, EOLA had creditors, including various individual investors.

245.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 29, 2022 and October 1, 2022, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Sheyenne Residential, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

246.    Sheyenne Residential was the first transferee of the EOLA Note and the EOLA Transfer.

247.    Based on the foregoing, the EOLA Note and the EOLA Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

248.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from Sheyenne Residential in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXVIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EOLA v. Sheyenne Residential)**

249.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

250.    EOLA entered into the EOLA Note with Sheyenne Residential and made the EOLA Transfer to Sheyenne Residential and received less than reasonably equivalent value in exchange. Sheyenne Residential did not provide EOLA with a security interest in any collateral and eventually only paid $14,166.60 to EOLA despite receiving $100,000 from EOLA.

251.    Before and during the period of September 29, 2022 to October 1, 2022, EOLA had creditors, including various individual investors.

252.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 29, 2022 and October 1, 2022, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Sheyenne Residential, EOLA was insolvent or became insolvent thereafter.

253.    Sheyenne Residential was the first transferee of the EOLA Note and the EOLA Transfer.

254.    Based on the foregoing, the EOLA Note and the EOLA Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

255.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from Sheyenne Residential in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A.     Enter judgment in favor of the Plaintiffs on their claims against the Defendants;

B.     Award the Plaintiffs their attorney's fees and costs for pursuing this action as allowed by applicable law and the above-described notes;

C.     Grant such other relief that the Court deems just and equitable.

Dated:  February 20, 2025

*/s/ Mark Western*
Joel M. Fremstad (ND ID #05541)
Mark Western (ND ID# 06181)
FREMSTAD LAW FIRM
P.O. Box 3143
Fargo, North Dakota 58108-3143
Phone: (701) 478-7620
joel@fremstadlaw.com
mark@fremstadlaw.com

## <u>AFFIDAVIT</u>

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief Restructuring Officer for EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC and I declare under penalty of perjury that the facts set forth in the preceding Complaint are true and correct, according to the best of my knowledge, information, and belief.

Dated:  February 20, 2025                    */s/ Patrick Finn*
                                                         Patrick Finn
                                                         Partner, Lighthouse Management Group, Inc.
                                                         Chief Restructuring Officer for the Plaintiffs